TERUMO CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81–8–00993

Before WATSON, Judge.

(Decided July 16, 1984)

*Glad & White (Robert Glenn White,* of counsel) for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, (*Deborah E. Rand,* attorney) for the defendant.

WATSON, *Judge:* The issue in this case is whether merchandise described on the entry papers as "SURFLO I.V. Catheters" was properly classified under Item 709.27, of the Tariff Schedules of the United States (TSUS),[1] as other medical and surgical instruments and apparatus dutiable at the rate of 16.7 percent *ad valorem.* Plaintiff contends that the merchandise should be classified as catheters and parts thereof, under Item 709.09 [2] dutiable at 5.8 percent *ad valorem.*

---

[1] The language of the classification reads as follows:

Medical, dental, surgical and veterinary instruments and apparatus (including electromedical apparatus and ophthalmic instruments), and parts thereof:

Other:

| | | |
|---|---|---|
| 709.27 | Other | 16.7% ad val. |

[2] Item 709.09 Bougies, catheters, drains, and sondes, and parts thereof 5.8% ad val.

The Court finds that the classification by the Customs Service was erroneous and that plaintiff's claim is correct.

The imported article consists essentially of a length of plastic tube attached to a hollow needle. It is used in the practice of medicine, primarily for introducing fluids through the skin, as in intravenous feeding or the supplying of blood, blood plasma or medications.

In this case it is first necessary to ascertain the meaning of Item 709.09. If that provision accurately describes the importation as a catheter, it is obviously more specific than the government's classification. An *eo nomine* provision must, unless a contrary legislative intent clearly is indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627 (1956).

The defendant argues that the imported device consists of more than a catheter because it contains a needle in addition to a tube. Defendant stresses the importance of the needle in eliminating the necessity for an act of incision. The defendant also argues that the catheter provision was intended only to govern catheters inserted through existing bodily orifices, particularly urological catheters.

In the opinion of the Court, the essential identifying characteristic of a catheter is that it is a tubular instrument inserted into the body and used for the administration or withdrawal of substances. This is the Court's understanding of the weight of the testimony and dictionary definitions. The needle is an aid to this primary function and has no dominant importance.

The fact that at one time catheters may have been simpler devices, entering the body only through existing orifices, or requiring a separate surgical procedure to enter through the skin, is of little moment in the classification of this device.

Item 709.09 of the TSUS is an *eo nomine* provision. An *eo nomine* provision, expressed without limitation or a demonstrated contrary legislative intent, judicial decision, or administrative practice, will include all forms of the article, including improved versions originating since the legislative enactment. Congress legislated for the future and is presumed to have intended to cover all forms of the article as they are developed. *Nomura (America) Corp.* v. *United States*, 62 Cust. Ct. 524, C.D. 3820 (1969), *aff'd.*, 58 CCPA 82, 85, 435 F.2d 1319 (1971).

The imported device is unified physically and functionally. The needle element of the article has no other use than in inserting the device into the body, and it has no independent function. This device is even more unified than the screwdriver with a flashlight

feature which was the subject of *Astra Trading Corp.* v. *United States,* 56 Cust. Ct. 555, C.D. 2703 (1966). In that decision the article was held to be not "more than" a screwdriver because the lighting feature did not give it a use other than as a screwdriver.

The decision in *Cragstan Corp.* v. *United States,* 51 CCPA 27 C.A.D. 832 (1963), cited by defendant is distinguishable. That case involved a "Baby in Walker" which incorporated the function of a doll and a mechanism which enabled the doll to walk. The Court held that the toy consisted of two equally essential components and hence was "more than" a figure of an animate object.

The mechanism which enabled the doll to walk transformed the essential character of the doll and gave the doll a function in addition to its intended use as a doll. However, the needle portion of the catheter does not transform the essential character of the catheter or cause it to acquire a different function or application. In addition, the Court found the testimony of plaintiff's witnesses more persuasive on the question of the identity of this device. It is simply a modern version of a catheter.

The definition of catheters is not limited to urological catheters or to catheters introduced through existing bodily orifices. It is true that when proposed Item 709.09 was first presented to Congress the Tariff Commission represented that the provision referred to urological instruments. The Commission comment stated that 709.09 "covers urological instruments known as bougies, catheters, drains * * * sondes." [3] That limitation however, was clearly not embodied in the plain meaning of the statute. [4] Defendant's witnesses acknowledged that the four named articles were not all urological instruments and were not all introduced through existing orifices.

Legislative history may be used for the purpose of ascertaining Congressional intent where the statute is ambiguous, but it should not be used to introduce ambiguity where the language is clear. *J.M. Altieri* v. *United States,* 62 Cust. Ct. 91, C.D. 3687 (1969).

Defendant claims that the method and terminology used in marketing these devices contradict the claimed classification as catheters. However, the fact that the merchandise is commercially known by a specific name, which name differs from a generic tariff description, is not sufficient to exclude the merchandise from classification under the latter designation. *S.G.B. Steel Scaffolding & Shoring Co. Inc.* v. *United States,* 82 Cust. Ct. 197, 210, C.D. 4802 (1979). A marketing emphasis on the features that make this device an improvement over past catheters is not an indication that something which is not a catheter has been created.

In short, the weight of the evidence and an examination of the device itself in the light of case law persuades the Court that it is a

---

[3] U.S. Tariff Commission, Tariff Clarification Study, Explanatory and Background Material 7, at xi (1960).

[4] When the U.S. Tariff Commission reviewed the application of Item 709.09 in 1970, no reference was made t urological instruments. U.S. Tariff Commission Summaries of Trade and Tariff Information Schedule 7, Vol. 59-67 (T.C. Pub. No. 322, 1970).

catheter within the meaning of Item 709.09. The superior specificity of that provision is also a demonstration of the incorrectness of the government's classification.

For this reason a judgment will be entered in favor of plaintiff's claim.